**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

---

| | |
|---|---|
| ADRIEN WATSON, | Civil Action No. |
| Plaintiff, | 3:18-cv-1666 (CSH) |
| v. | |
| KAREN CARUSO and MIND YOUR BUSINESS INC., | **DECEMBER 2, 2019** |
| Defendants. | |

---

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**HAIGHT, Senior United States District Judge:**

*Pro se* Plaintiff Adrien Watson ("Plaintiff" or "Watson") brings this action seeking damages from Mind Your Business, Inc. ("Defendant MYB" or "MYB"), and its founder and chief executive officer, Karen Caruso ("Defendant Caruso" or "Caruso"; and, collectively with MYB, "Defendants"). Doc. 1-2 ("Complaint").[1]

MYB is a provider of employment screening, background investigations, equal opportunity in employment ("EEO") investigations, and drug-screening services. Plaintiff alleges that MYB sold

---

[1] In a prior Order, the Court sealed Plaintiff's Complaint. Doc. 9 ("Electronic Order Granting Defendants' Motion to Seal Pursuant to Local Rule 5(e)"). Defendants' Counsel inadvertently uploaded to the docket an unredacted version of Plaintiff's Complaint, which contained personal identifying information—namely, Plaintiff's date of birth. Doc. 1-2, at 2. Aside from Plaintiff's date of birth, however, the remainder of Plaintiff's Complaint did not need to be redacted. Nonetheless, Defendants subsequently filed a motion to seal the entirety of Plaintiff's Complaint. Doc. 5 ("Motion to Seal Pursuant to Local Rule 5(e)"). The Court thereafter granted Defendants' motion—rather than requiring Defendants to upload a partially-redacted version of the Complaint—because of technical reasons involving CM/ECF. Doc. 5-1 ¶¶ 4–5 ("Certification of John E. MacDonald, Esq."). As such, the Court need not seal the instant Ruling in its entirety, despite references herein to information contained in Plaintiff's (sealed) Complaint.

-1-

to Plaintiff's former employer a criminal background check that contained information about a prior conviction, even though a Connecticut state court had ordered the erasure of the criminal record because the offense had been decriminalized. *Id.* at 2. Defendants answered the Complaint. Doc. 10 ("Answer"). Plaintiff thereafter filed a response to Defendants' Answer, which contained documents to support the allegations in his Complaint. Doc. 11 ("Plaintiff's Response").

Defendants have now filed a motion for summary judgment. Doc. 25 ("Motion for Summary Judgment"); Doc. 25-6 ("Defendants' Statement of Material Facts"); Doc. 25-11 ("Defendants' Brief"). Defendants contend that Plaintiff's state law claims do not apply to the facts of this case, Doc. 25-11, at 9–13; Defendants did not violate the federal Fair Credit Reporting Act ("FCRA"), *id.* at 13–30; and, that Plaintiff's common law state claims, if any, are barred by the FCRA, *id.* at 31–32.[2] Defendant Caruso also argues that all of Plaintiff's claims against her should be dismissed because Plaintiff has not made any factual allegations supporting individual liability against her. *Id.* at 30–31. Plaintiff has not filed any opposition. This Ruling resolves Defendants' motion.

---

[2] Plaintiff's Complaint does not specifically mention these statutes or causes of action. However, given this Court's obligation to interpret Plaintiff's pleadings liberally (as he is a *pro se* litigant), *see infra* Section II, Defendants' Brief appropriately construes Plaintiff's Complaint to refer to various potential federal and state law causes of action, such as the FCRA. The Court agrees with Defendants' interpretation and in this Ruling analyzes such claims accordingly.

# I.  BACKGROUND

The facts herein are taken from Defendants' Statement of Material Facts, which are accepted as true only for purposes of this Ruling.[3]

On or about October 23, 1998, Plaintiff pleaded guilty to sexual assault in the second degree in violation of Conn. Gen. Stat. § 53a-71(a)(1).  Doc. 25-6 ¶ 3.  Plaintiff was convicted under that statute, on the basis that he had sexual contact with a person who was fifteen years of age when he was seventeen years of age.  *Id.* ¶ 4.  However, the Connecticut legislature decriminalized the Plaintiff's conduct in 2007.  *Id.* ¶ 5.  In consequence, on or about March 22, 2016, Plaintiff filed a Petition for Destruction of Record of Decriminalized Offense, which requested that the court erase Plaintiff's 1998 conviction.  *Id.* ¶ 6.  The petition was granted on or about July 7, 2016.  *Id.* ¶ 7.

---

[3]  Defendants have certified that they served upon Plaintiff a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment," along with the relevant motion papers.  Doc. 25-14, at 1–2.  That notice provides, in relevant part: "The motion may be granted and your claims may be dismissed without further notice if you do not file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure, and if the motion shows that the movant is entitled to judgment as a matter of law."  D. Conn. L. Civ. R. 56(b) (emphasis omitted).  Plaintiff has not filed any opposition papers to Defendants' Motion for Summary Judgment, however.  Nor has he filed a Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment, as required by this District's Local Rules.  *See* D. Conn. L. Civ. R. 56(a)(2)(i).  Typically, this would mean that all facts in a defendant's Statement of Material Facts would be admitted.  *See id.* 56(a)(1) ("Each material fact set forth in the [movant's] Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement.").  However, Plaintiff is a *pro se* litigant and therefore the Court will construe his submissions "liberally."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *Claude v. Wells Fargo Bank, N.A.*, No. 13-cv-535 (VLB), 2015 WL 5797007, at *3 (D. Conn. Sept. 30, 2015) ("Plaintiff has failed to clearly respond to the Defendant's assertions proffered in its 56(a)1 statement, and he has also failed to provide a proper 56(a)2 statement in connection with his summary judgment opposition.  Because Plaintiff is proceeding *pro se*, the Court will liberally construe his submissions." (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

Plaintiff began working at St. Vincent DePaul Mission of Bristol ("SVDP") on or around July 22, 2018. *Id.* ¶ 8. About four days later, the Catholic Diocese of Hartford engaged MYB's services to prepare a criminal background report relating to Plaintiff. *Id.* ¶ 9.[4] MYB thereafter accessed the integrated platform of RapidCourt, LLC ("RapidCourt"), a third-party vendor, and undertook a national search of Plaintiff's name to obtain Plaintiff's criminal history records. *Id.* at ¶ 10.[5] The search returned information relating to Plaintiff's 1998 conviction for "sexual assault;" and, the search results labeled Plaintiff "SEX OFFENDER" in its "jurisdiction" section. *Id.* ¶ 16. The search did not indicate that Plaintiff's 1998 conviction had been the subject of a Petition for Destruction of Record of Decriminalized Offence, or that the petition had been granted. *Id.* ¶ 18.

On or about July 31, 2018, MYB provided the Diocese of Hartford/SVDP with a copy of the criminal background report it prepared concerning Plaintiff, which included the 1998 sexual assault record. *Id.* ¶ 19. SVDP subsequently issued a letter to Plaintiff informing him that it was "not able to move forward with your employment as a result of your Background Verification Report." *Id.* ¶ 20.

---

[4] The precise relationship between SVDP and the Diocese of Hartford is not entirely clear from either of the Parties' submissions—for example, why the Diocese of Hartford, rather than SVDP directly, engaged MYB's services to prepare a criminal background report relating to Plaintiff. According to SVDP's website, SVDP is "an official Catholic Charity supported by the Archdiocese of Hartford." ST. VINCENT DEPAUL MISSION OF BRISTOL, INC., *About Us*, http://www.svdpofbristol.com/about_us.aspx (last visited November 20, 2019). Nonetheless, the relationship between the two entities is not necessarily relevant for purposes of resolving Defendants' Motion.

[5] RapidCourt's platform pulls records from the Connecticut Administrative Office of the Courts, the Connecticut Department of Public Safety, the Connecticut Department of Corrections, the Mashantucket Pequot Tribal Nation Sex Offender Registry, the Connecticut Sex Offender Registry, and the Connecticut Department of Social Services Administrative Actions List. Doc. 25-6 ¶ 13. According to RapidCourt's Comprehensive Criminal Search Source List, the Connecticut Sex Offender Registry source is updated weekly. *Id.* ¶ 14.

## II.   STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Id.*

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  If the initial burden is satisfied, the burden then shifts to the nonmoving party to present "specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (internal quotation marks and citation omitted).  While the Court must view the record in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *see Anderson*, 477 U.S. at 255, the nonmoving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must support any assertion disputing the veracity of a fact or existence of an alleged dispute with specific citation to the evidentiary record. *See* Fed. R. Civ. P. 56(c)(1).

Because Plaintiff is proceeding *pro se*, the Court must read his submissions "liberally" and interpret them "to raise the strongest arguments" that they suggest.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of

the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).

## III.  DISCUSSION

### A.    Connecticut's Erasure Statute

Defendants claim that Conn. Gen. Stat. Ann. § 54-142e does not apply to the facts of this case; and, as such, any possible claims that Plaintiff might have under that statute ought to be dismissed.  Doc. 25-11, at 10.  Alternatively, Defendants claim that the statute does not create a private right of action.  *Id.* at 11–12.  Defendants make similar arguments with respect to Conn. Gen. Stat. Ann. § 31-51i.  *Id.* at 12–13.

Section 54-142e commands "[e]ach person"—including a consumer reporting agency—that has "purchased records of criminal matters of public record from the Judicial Department" to undertake two tasks prior to disclosing such records.  Conn. Gen. Stat. Ann. § 54-142e(b).[6]

First, a consumer reporting agency must "purchase from the Judicial Department, on a monthly basis or on such other schedule as the Judicial Department may establish, any updated criminal matters of public record or information available for the purpose of complying with this section."  *Id.*[7]  Second, a consumer reporting agency must "update its records of criminal matters of

---

[6]  "Criminal matters of public record" refers to any "information obtained from the Judicial Department relating to arrests, indictments, convictions, outstanding judgments, and any other conviction information."  Conn. Gen. Stat. Ann. § 31-51i(i)(1).

[7]  Under the statute, the Judicial Department is instructed to make available to consumer reporting agencies that purchase criminal matters of public record "information concerning such criminal matters of public record that have been erased. . . . that permits [them] to identify and permanently delete records that have been erased pursuant to section 54-142a."  Conn. Gen. Stat. Ann. § 54-142e(a).

public record to permanently delete such erased records"; and, it must "not further disclose such erased records." *Id.*

Similarly, Conn. Gen. Stat. Ann. § 31-51i requires consumer reporting agencies to "[m]aintain procedures designed to ensure that any criminal matter of public record reported is complete and up-to-date as of the date the consumer report is issued, which procedures shall, at a minimum, conform to the requirements set forth in section 54-142e." Conn. Gen. Stat. Ann. § 31-51i(i)(2)(B).

A principal contention of Defendants is that section 54-142e does not apply to the facts of this case because MYB "did not purchase Plaintiff's criminal records *'from the Judicial Department'* within the meaning of section 54-142e, but rather obtained them through a national search using" RapidCourt. Doc. 25-11, at 10 (emphasis added). Likewise, Defendants contend that section 31-51i does not apply because they did not "obtain Plaintiff's criminal history records *from the Judicial Department*," and, therefore, the consumer report that MYB issued did not include "criminal matters of public record" within the meaning of the statute. *Id.* at 12 (emphasis added). Defendants do not cite to any case law—or any authorities, for that matter—to support these statutory interpretations. Nor do they cite any legislative history.

The core legal question is whether sections 54-142e and 31-51i apply (1) only when consumer reporting agencies purchase "criminal matters of public record" *directly* "from the Judicial Department"; or (2) if the statutes also apply when consumer reporting agencies purchase records from an intermediary (such as a contracted company, like RapidCourt). Presumably, the second statutory interpretation would reflect a perceived legislative policy and purpose that even though consumer reporting agencies had not directly transacted with the Judicial Department, the records

they obtained from the intermediary nonetheless originally derived from the Judicial Department, and therefore they are still "criminal matters of public record." Conn. Gen. Stat. Ann. § 54-142e(b); *id.* § 31-51i(i)(1)(C) (defining "criminal matters of public record" as "information obtained from the Judicial Department relating to arrests, indictments, convictions, outstanding judgments, and any other conviction information").

This question of statutory interpretation is important because the answer significantly expands or contracts the statutes' reach. If the Connecticut legislature intended the first interpretation—*i.e.*, that the statutes apply only if consumer reporting agencies purchase criminal matters of public record directly from the Judicial Department—then agencies that purchase records from an intermediary are not subject to the statutes' mandates. Under those circumstances, Defendants in the case at bar theoretically could not be held liable under those statutory provisions because they acquired Plaintiffs' criminal records from RapidCourt, not the Judicial Department. On the other hand, if the statutes apply to any consumer reporting agency that has purchased criminal matters of public record that originally, at one point, came from the Judicial Department, then the Defendants in this case could be liable for violating those laws.

The provisions in question took effect in 2008. *See* 2008 Conn. Legis. Serv. P.A. 08-53 (S.B. 704); 2007 Conn. Legis. Serv. P.A. 07-243 (S.S.B. 1089). Over a decade later, there is a dearth of case law interpreting Conn. Gen. Stat. Ann. § 54-142e, the principal relevant statute. Defendants' Brief does not cite any decision construing or interpreting that statute. The Court's research has not revealed any such case. The statute's legislative history does not provide much guidance with respect to its scope or purpose. *See* Connecticut House Transcript, 4/28/2008. Nor does the handful of scholarly works that reference the statute. *See, e.g.*, Eldar Haber, *Digital Expungement*, 77 MD.

L. Rᴇᴠ. 337, 366 n.176 (2018); Doris Del Tosto Brogan, *Expungement, Defamation, and False Light: Is What Happened Before What Really Happened or Is There A Chance for A Second Act in America?*, 49 Lᴏʏ. U. Cʜɪ. L.J. 1, 20 (2017).

In the absence of controlling state law, the Court might ordinarily interpret the state statute using the normal rules of statutory interpretation. *See Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003) (discussing how federal courts "may ordinarily interpret ambiguous state statutes using the normal rules of statutory interpretation, even in the absence of controlling state authority"). In other circumstances, the Court could consider certifying the question of law to the Connecticut Supreme Court. *See id*. (noting that certification may be appropriate if other "factors strongly suggest that [courts] defer to the Connecticut Supreme Court"); *see also Elec. Contractors, Inc. v. Ins. Co. of Pennsylvania*, No. 11-cv-1432 (VLB), 2012 WL 6021321, at *3 (D. Conn. Dec. 3, 2012) (certifying a question to the Connecticut Supreme Court because "Connecticut clearly ha[d] a compelling interest in the issue"). For the reasons discussed below, however, the Court need not engage in statutory interpretation or certify the question because the Court agrees with Defendants that the statutes do not provide Plaintiff with a private right of action. If the statutory schemes containing sections 54-142e and 31-51i do not confer upon a private party like Adrien Watson a right of action to enforce the statutes' provisions, then the precise meaning of the statutes, their purposes and nuances, need not be analyzed further. One may sympathize with Watson's outrage at the prejudicial revelation to a prospective employer of his erased criminal conviction for conduct at age 17, but without a private right of action for violation of the statute forbidding that revelation, Watson's remedy cannot be sought in this or any other court.

As alluded to above, neither the Supreme Court of Connecticut nor the Connecticut Appellate Court has decided the issue of whether there is a right of private enforcement under sections 54-142e and 31-51i. Under Connecticut law, though, there is a "well settled fundamental premise . . . that private enforcement does not exist unless expressly provided in a statute." *Provencher v. Town of Enfield*, 284 Conn. 772, 777 (2007). To overcome that presumption, "the plaintiff bears the burden of demonstrating that such an action is created implicitly in the statute." *Id.* at 777–78.

When considering whether an implied private right of action exists, courts must not "go beyond the text of the statute and its relationship to other statutes unless there is some textual evidence that the legislature intended, but failed to provide expressly, a private right of action." *Id.* at 778. Examples of such "textual evidence" include "language granting rights to a discrete class without providing an express remedy or language providing a specific remedy to a class without expressly delineating the contours of the right." *Id.*

### 1. *Section 54-142e*

Turning first to section 54-142e(b), its express language sets out the statute's affirmative command—for example, purchase from the Judicial Department "any updated criminal matters of public record or information available for the purpose of complying with this section." Conn. Gen. Stat. Ann. § 54-142e(b)(1). The statute's language also sets out negative commands—*e.g.*, individuals may not "further disclose . . . erased records." *Id.* § 54-142e(b)(2). The text of section § 54-142e(b), however, provides no indication that the "legislature intended, but failed to provide expressly, a private right of action." *Provencher*, 284 Conn. at 778.

Plaintiff has not submitted any case law in support for recognizing a private right of enforcement. For their part, Defendants argue that the statute "does not provide for any penalties

-10-

relating to a violation" of the section. Doc. 25-11, at 10. In support of that argument, Defendants primarily cite to *Ferdinand v. City of New Haven*, No. cv97-0401180S, 2003 WL 283814, at *2 (Conn. Super. Ct. Jan. 28, 2003), where the court concluded that a comparable statute, Conn. Gen. Stat. Ann. § 54-142a (captioned, "[e]rasure of criminal records"), did not provide for a private cause of action.[8] In so concluding, the *Ferdinand* court emphasized that the statute's language was "straightforward"—that is, it lacked an "express authorization for a private cause of action for a violation of the statutory erasure provisions." *Id.* at *3. According to the court, "[i]f the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *Id.* (quoting *Office of Consumer Counsel v. Dept. of Public Utility Control*, 246 Conn. 18, 29 (1998)). And, the court was not prepared to fashion a private right of action because the absence of any reference to one in "the words of the statute" indicated that "the legislature ha[d] not provided for [one]." *Id.*

In this case, 54-142e(b)'s language is also straightforward and does not provide for a private right of action. This Court is therefore similarly unprepared to fashion a private remedy, particularly when the Connecticut Supreme Court has cautioned against it in analogous circumstances. *See Provencher*, 284 Conn. at 778.

This conclusion is also consistent with reported cases that have addressed comparable statutes, several of which Defendants have cited. *See, e.g., Ferdinand*, 2003 WL 283814, at *3

---

[8] The relevant part of the statute that the *Ferdinand* court analyzed reads, in part: "Whenever in any criminal case . . . the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased." Conn. Gen. Stat. Ann. § 54-142a(a). Although *Ferdinand* was decided in 2003, it does not appear that the Connecticut legislature has altered the relevant part of the statute in the intervening years. *Compare id.*, *with Ferdinand*, 2003 WL 283814, at *1 n.3 (quoting Conn. Gen. Stat. Ann. § 54-142a(a)).

("Since the legislature has not provided for a private cause of action [in section 54-142a], this court cannot allow for one."); *Ericksen v. Town of Rocky Hill*, No. cv93-0529218S, 1995 WL 681551, at *3 (Conn. Super. Ct. Nov. 3, 1995) ("Section 54-142a(b) and (c) explicitly provide that the arrested person or his or her heirs may come into court to have the records erased. Under a statutory scheme like this it would be difficult to imagine that the legislature would have intended to create a private cause of action."); *Saccente v. Town of Rocky Hill*, No. cv93-0529219, 1995 WL 31202, at *2 (Conn. Super. Ct. Jan. 19, 1995), *as corrected* (Feb. 1, 1995) ("The claim that a private cause of action may be brought under General Statutes § 54-142a(2) or 54-142(c)(b) is rejected.").

As there is no private right of enforcement under Conn. Gen. Stat. Ann. § 54-142e, Defendant's motion for summary judgment must be granted with respect to that potential claim.

### 2.    *Section 31-51i*

Conn. Gen. Stat. Ann. § 31-51i presents a slightly different analysis, because the statute does articulate a remedial scheme. It provides that "[a]n employee or prospective employee may file a complaint with the Labor Commissioner alleging an employer's violation of this section." Conn. Gen. Stat. Ann. § 31-51i(j).

Defendants contend that the statute does not provide for a private right of action because it only permits individuals to "file a complaint with the *Labor Commissioner*," rather than a lawsuit in court, and the individual must be "alleging an *employer's* violation" of the statute, not a consumer reporting agency's violation. Doc. 25-11, at 12 (emphasis added). According to Defendants, therefore, "[t]he remedy provided to individuals under [the] statute is exclusively administrative and exclusively against employers as provided in the [plain] language of the statute." *Id.* (internal quotation marks omitted).

To support this argument, Defendants primarily cite to *Saccente*, 1995 WL 31202. That case is inapposite in the present context, however. In *Saccente*, the court concluded that sections 54-142a(a) and 54-142c(b) did not create a private cause of action for their violation because "[a]bsent from the text of either of [those] statutes is the explicit authorization for a private cause of action." *Saccente*, 1995 WL 31202, at *2. *Saccente*, therefore, supports Defendants' argument that the Court addressed above—namely, that section 54-142e(b) does not explicitly authorize a cause of action because the text of that statute lacks an explicit authorization for a private cause of action. But the case does not stand for the separate proposition that a statute's authorization of one remedial scheme—in section 31-51i's case, an administrative remedy for "an employer's violation" of the statute—inherently precludes all other remedies, such as a private cause of action.

Nonetheless, the Court agrees that section 31-51i, like section 54-142e, does not provide for a private cause of action. Although the Court has not found a case addressing this statute, the court in *Thompson v. Bridgeport Hospital*, No. cv98-0352686S, 2001 WL 1378829 (Conn. Super. Ct. Oct. 23, 2001) undertook a comparable analysis. In that case, the court analyzed a Connecticut statute governing an "[e]mployee's right to obtain copies," which provides that "[e]ach employer shall, within a reasonable time after receipt of a written request from an employee, provide such employee with a copy of all or part of his personnel file." Conn. Gen. Stat. Ann. § 31-128g. According to the court, "[t]he remedy for the employer's failure to comply with [the] statute is, as per Connecticut General Statute § 31-2(a), to file a complaint with the Labor Commissioner." *Thompson*, 2001 WL 1378829, at *6. The court then addressed whether, in addition to an administrative remedy, the statute also provided for a private right of action:

Our decisional law makes clear the doctrine of primary jurisdiction dictates the employee's claim be heard first by the Labor Commissioner whose expertise in this specialized area of the law is unquestioned. . . . No authority for the proposition this plaintiff has a private cause of action under Connecticut General Statute § 31-128g is provided; nor is there the allegation in Count Six this plaintiff made a written request that the employer provide her . . . personnel file (much less that such written request particularized the documents she wished) or that she had exhausted the administrative remedy available to her when the employer did not respond to her.

*Id.*

The case at bar is analogous. The Court agrees with Defendants that Conn. Gen. Stat. Ann. § 31-51i provides for an administrative remedy, but no private right of action. Plaintiff has not submitted any authorities to the contrary. Nor from Plaintiff's submissions is there any indication that he first exhausted the administrative remedy available to him. As such, Defendants are entitled to summary judgment on such a claim.

**B.      Fair Credit Reporting Act**

**1.      *Section 1681e(b)***

Defendants also claim that they are entitled to summary judgment on a potential FCRA claim. "The FCRA creates a private right of action against credit reporting agencies for the negligent . . . or willful . . . violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (citations omitted). For any such violation, "the credit reporting agency is liable to the consumer for actual damages sustained, the costs of the action together with reasonable attorney's fees and, in the case of willful noncompliance, punitive damages." *Id.* (citations and internal quotation marks omitted).[9]

---

[9] 15 U.S.C. § 1681n outlines the penalties imposed on consumer reporting agencies for willful noncompliance and 15 U.S.C. § 1681n for negligent noncompliance.

The FCRA requires that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To recover on a section 1681e(b) claim, a plaintiff must show that: "(1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013) (citation and internal quotation marks omitted). Further, "the threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* (citation and internal quotation marks omitted).

Defendants first argue that Plaintiff's FCRA claim should fail because "the information provided relative to the 1998 conviction was factually accurate," which Plaintiff "admits . . . in his own Complaint." Doc. 25-11, at 15. Plaintiff, on the other hand, claims that MYB's inclusion of the conviction in the background check constituted "inaccurate information." Doc. 1-2, at 2.

The Second Circuit has "yet to address" the definition of accuracy within the meaning of 15 U.S.C. § 1681e(b). *Khan v. Equifax Info. Servs.*, *LLC*, No. 18-cv-6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019). However, "[t]he overwhelming weight of authority holds that a credit report is inaccurate . . . either when it is patently incorrect *or* when it is misleading in such a

way and to such an extent that it can be expected to have an adverse effect." *Id.* (collecting cases; citations and internal quotation marks omitted).[10]

*Obabueki v. International Business Machines Corporation*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001), *affirmed*, 319 F.3d 87 (2d Cir. 2003) exemplifies these principles. In *Obabueki*, which involved a set of circumstances that are analogous to the case at bar, Choicepoint, a credit reporting agency, provided the plaintiff's employer, International Business Machines Corporation ("IBM"), with a background check report that contained information relating to a criminal misdemeanor. *See id.* at 377. Choicepoint relied on one of its contractors, Inquest, to provide Choicepoint with information relating to the plaintiff's criminal record, but Inquest evidently did not mention to Choicepoint that the plaintiff's misdemeanor had been "vacated" and "dismissed" pursuant to a state statute. *See id*. Choicepoint thereafter provided the plaintiff's report to IBM after IBM had extended to plaintiff a conditional offer of employment. *See id*. The report failed to mention the dismissal of the conviction, and, after some deliberation, IBM withdrew the plaintiff's conditional offer of employment. *See id*.

---

[10] This "materially misleading" standard differs from a "technically accurate" standard. Under the latter standard, "a report is accurate for the purposes of the FCRA so long as it is technically accurate, or accurate on its face." *Fitzgerald v. Chase Home Fin., LLC*, No. 10-cv-4148 (CS), 2011 WL 9195046, at *10 (S.D.N.Y. Feb. 28, 2011) (citation and internal quotation marks omitted). Defendants appear to advocate for the Court's adoption of the latter standard. *See, e.g.*, Doc. 25-11, at 19 ("The fact that [Plaintiff's] actions may later have been decriminalized and the conviction subject to an Order for erasure are additional facts . . . does *not* make the report *inaccurate*. The failure to include this additional information does not impugn the ultimate factual accuracy of the report."). However, as noted above, "[t]he overwhelming weight of authority" supports the "materially misleading" approach. *See Khan*, 2019 WL 2492762, at *3; *Friedman v. CitiMortgage, Inc.*, No. 18-cv-11173 (VB), 2019 WL 4194350, at *3 (S.D.N.Y. Sept. 3, 2019) (same).

The *Obabueki* plaintiff then brought a lawsuit against Choicepoint for violating section 1681e(b) of the FCRA, claiming that Choicepoint "neither provided 'maximally accurate' information to IBM nor ha[d] 'reasonable procedures' designed to ensure such accuracy." *Id.* at 398 (quoting 15 U.S.C. § 1681e(b)). The court agreed. Although the court did not overtly use the "materially misleading" standard that courts in this Circuit have more recently followed, the court found that "the information provided to IBM was not maximally accurate under Section 1681e(b), given Choicepoint's failure to report the [dismissal]." *Id.* at 399. The court proceeded to deny Choicepoint's motion for summary judgment, concluding that:

> [I]ssues of fact exist with regard to the nature of Choicepoint's investigatory procedures as applied to the instant case so as to prevent a judgment as a matter of law as to their reasonableness. Moreover, even assuming they are unreasonable, the jury must determine whether Choicepoint intentionally maintained such unreasonable procedures, or knew or should have known this to be the case.

*Id.*; *cf., e.g.*, *Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693 (PAE), 2016 WL 3538379, at *14 (S.D.N.Y. June 22, 2016) (denying the defendant's motion for summary judgment on a FCRA claim because a background check requested by a landlord that reported a possessory judgment against a tenant in housing court was materially misleading: the report omitted key information, including that the judgment had been entered on consent pursuant to a stipulation signed before the proceedings commenced, and that the tenant had fully complied with the terms of that stipulation).

In the present case, the Court cannot agree with Defendants that MYB's background check report regarding Plaintiff was accurate as a matter of law. Specifically, and, like *Obabueki*, the Court finds that the information provided to the Diocese of Hartford/SVDP was not accurate under section 1681e(b), given MYB's inclusion of Plaintiff's 1998 conviction for sexual assault. MYB's inclusion

of an erased conviction—which, pursuant to section 54-142e(b), ought not to have been disclosed—could very clearly have an adverse effect on an individual's employment prospects and render the report materially misleading to an employer. *See Wenning*, 2016 WL 3538379, at *14.[11]

Defendants cite to *McPhee v. Chilton Corp.*, 468 F. Supp. 494 (D. Conn. 1978) for the proposition that "cases have refused to find that omissions in reports otherwise true render those reports inaccurate within the meaning of s[ection] 1681e and thus trigger an inquiry into the procedures by which the reports are compiled." *McPhee*, 468 F. Supp. at 497. In *McPhee*, District Judge Newman, as he then was, concluded that a credit report did not run afoul of section 1681e's accuracy standards even though the report referenced the plaintiff's petition for bankruptcy, which was ultimately withdrawn and dismissed. *See id.* at 495. The court cited to analogous cases in support of that conclusion—most pertinent to the case at bar, *Middlebrooks v. Retail Credit Co*., 416 F. Supp. 1013, 1014 (N.D. Ga. 1976), which "involved a report that included information about the plaintiff's arrest in connection with a gambling raid, but no updated information to the effect that an ultimate disposition of the criminal charge had not been made." *Id.* Judge Newman noted that the *Middlebrooks* court "found the report[] accurate despite the omission[]." *Id.*

---

[11] To be sure, the Court recognizes a factual difference between *Obabueki* and the case at bar—namely, that the *Obabueki* consumer reporting agency failed to qualify its report of plaintiff's misdemeanor with an explanation that the criminal record had been dismissed. *Obabueki*, 145 F. Supp. 2d at 377. In the instant case, Defendants reported Plaintiff's conviction even though Connecticut law dictates that Defendants should not have "further disclose[d] such erased records" in the first instance, regardless of their inclusion of an explanatory statement. Conn. Gen. Stat. Ann. § 54-142e(b). The Court does not take a position on whether the inclusion of an explanatory statement in Plaintiff's report, similar to *Obabueki*, would have sufficiently clarified the report such that it would not be "materially misleading" for purposes of an FCRA claim, *see Khan*, 2019 WL 2492762, at *3, even though the inclusion of the erased conviction—along with an explanation—still might run afoul of Connecticut's erasure statute, *see* Conn. Gen. Stat. Ann. § 54-142e(b).

This Court is not persuaded by Defendants' citation to *McPhee* for several reasons. As an initial matter, *McPhee* is not completely on point because it addressed the accuracy of a credit report that referenced a petition of bankruptcy—not an erased criminal record. *See McPhee*, 468 F. Supp. at 495. Additionally, the case that Judge Newman cited in *McPhee* that *did* address a criminal record, *Middlebrooks*, is from outside of this District, and this Circuit, for that matter. While *Middlebrooks* may be well-reasoned, I am not bound by it.[12] Instead, I am persuaded by the analysis in *Obabueki*—where a credit agency's failure to report a dismissal of a criminal matter was inaccurate under the FCRA—which the Second Circuit affirmed, in a *per curiam* opinion that now-Circuit Judge Newman also presided over. *See Obabueki v. Int'l Bus. Machines Corp.*, 319 F.3d 87, 88 (2d Cir. 2003). Defendants' arguments, therefore, do not alter the Court's determination. The Court cannot conclude as a matter of law that MYB's report was accurate within the meaning of the FCRA.

Defendants next contend that MYB did not violate the FCRA because it "followed reasonable procedures in preparing Plaintiff's report." Doc. 25-11, at 21. These reasonable procedures consisted of obtaining information about Plaintiff from RapidCourt—"a well-established, reputable, and reliable third party vendor which it had thoroughly vetted and used for about five years without difficulty." *Id.* This argument is misguided. If this were the case, then consumer reporting agencies could insulate themselves from liability under section 1681e, so long as they outsource their work to contractors like RapidCourt. The FCRA's remedial purpose could not be achieved under that theory. *See Wilson v. Corelogic SafeRent, LLC*, No. 14-cv-2477 (JPO), 2017 WL 4357568, at *4

---

[12] Defendants' citation to *Austin v. BankAmerica Serv. Corp.*, 419 F. Supp. 730, 733 (N.D. Ga. 1974), does not alter the Court's analysis for similar reasons.

(S.D.N.Y. Sept. 29, 2017) ("Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party." (citation and internal quotation marks omitted)).[13]

Defendants next argue that "RapidCourt's Comprehensive Criminal Search Source List outlines that the Connecticut criminal and sex offender records obtained from a national search through RapidCourt come from reliable sources including the Connecticut Administrative Office of the Courts." Doc. 25-11, at 22. That argument appears to be another bite at the finger-pointing apple. It is also unconvincing. It is true, as Defendants point out, that in certain circumstances a credit reporting agency's "utilization of [an] independent agency" and reliance on government records might constitute "reasonable procedures" within the meaning of the FCRA. *Houston v. Trans Union Credit Info. Co.*, No. 88-cv-0679 (JSM), 1990 WL 151129, at *2 (S.D.N.Y. Oct. 3, 1990). But "courts have not held that reliance on the records received from a governmental agency is *per se* reasonable for purposes § 1681e(b), but instead have explained that 'reasonableness' under FCRA requires 'context-specific' balancing." *Wilson*, 2017 WL 4357568, at *4 (citation omitted). And, to accept Defendants' argument "that reliance on information obtained from a governmental agency, regardless of context, categorically insulates a CRA from liability," would, like Defendants'

_____

[13] Defendants argue that MYB had no reason to believe that they received "inaccurate . . . or outdated" information from RapidCourt. Doc. 25-11, at 22. In support of that argument, Defendants claim that MYB had for years been using RapidCourt's services and never "had any problems which would have led it to question the accuracy of the information obtained from the same." Doc. 25-11, at 23. Defendants' argument is unavailing. The FCRA commands consumer reporting agencies to affirmatively "follow reasonable procedures to assure the accuracy of its credit report[s]." 15 U.S.C. § 1681e(b). It does not state that consumer reporting agencies should adopt "reasonable procedures" only when they have reason to believe that the information on which they rely is inaccurate.

-20-

previous argument, "severely undermine FCRA's remedial purpose." *Id.* The Court therefore rejects this argument, as well.[14]

Lastly, Defendants argue that Plaintiff "has proffered *no* evidence whatsoever from which a trier of fact could infer that Defendant failed to follow reasonable procedures in preparing his background report." Doc. 25-11, at 21. As a result, according to Defendants, Plaintiff cannot defeat summary judgment. *Id.* As noted above, however, the Court must construe Plaintiff's submissions liberally because he is a *pro se* litigant. *See Rodriguez*, 209 F. Supp. 2d at 348. Plaintiff has alleged that MYB "managed to prepare a background check with mentioned docket [number] and sold this inaccurate information to a third party which is now my former employer." Doc. 1-2, at 2. Construing this statement liberally, Plaintiff is alleging that there "managed" to be some breakdown in the background check preparation process—or a lack of process altogether—that resulted in MYB's failure to undertake "reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). In any event, Defendants have not demonstrated that they are entitled to summary judgment on this claim. As noted *infra* in Section III.B.2, Defendants have not proffered any evidence that they maintain any procedures to ensure accuracy, apart from relying entirely on information obtained from RapidCourt. There is a genuine disputed fact whether Defendants maintained any procedures whatsoever, let alone "reasonable procedures." 15 U.S.C. § 1681e(b).

---

[14] In that regard, Defendants argument that "RapidCourt's Comprehensive Criminal Search Source List, the Connecticut Sex Offender Registry source is updated *weekly*" fails, as well. Doc. 25-11, at 23. It is an additional attempt to lay blame on other actors, which, as noted multiple times in this Ruling, is not as a matter of law enough to defend against FCRA liability, which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b); *see also Wilson*, 2017 WL 4357568, at *3–4.

Defendants also argue that Plaintiff's section 1681e(b) claim should fail for the additional reason that Defendants' negligence did not proximately cause Plaintiff's injury. Doc. 25-11, at 23–27. The Court disagrees. A reasonable jury could find that MYB's actions caused Plaintiff's injury—specifically, that SVDP would not have revoked its contingent offer but for MYB's inclusion of the erased conviction in the background check report that it prepared.

Defendants nonetheless make several arguments to support their contention that they are entitled to summary judgment here. First, Defendants argue that Plaintiff was the source of his own injury because he failed to mitigate his damages. Doc. 25-11, at 24. Defendants contend that Plaintiff must have received a "pre-adverse action" letter from SVDP, which would have provided him with notice of the criminal background findings and an opportunity to correct the record. *Id.*[15] And, because Plaintiff failed to correct the record, according to Defendants, "any injuries, including . . . the termination of his employment, would be due solely to Plaintiff's own negligent failure to act." *Id.*

This argument is misguided. As an initial matter, Defendants seem to conflate the causation and damages elements of a FCRA claim. Whether or not Plaintiff attempted to mitigate his damages might be an affirmative defense and it might affect the ultimate calculation of damages, but it is unrelated to the causation element of the claim. *Cf. Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014) ("[T]he failure of the consumer to mitigate his damages by filing suit [for a FCRA violation] when he is first injured . . . should have a bearing only on the calculation

---

[15] The FCRA states that "in using a consumer report for employment purposes, before taking any adverse action based . . . on the report, the person . . . shall provide to the consumer" (i) "a copy of the report" and (ii) "a description" of the consumer's FCRA rights. 15 U.S.C. § 1681b(b)(3)(A).

of damages." (citation and internal quotation marks omitted)).[16]  Furthermore, and, in any event, there is no evidence in the record indicating that Plaintiff received such a "pre-adverse action" letter. It is, rather, speculation at this point.  Viewing the record in a light most favorable to Plaintiff, the nonmoving party, the Court rejects Defendants' argument for purposes of this motion.  *See Anderson*, 477 U.S. at 255.[17]

Defendants make an additional proximate cause argument.[18]  ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[16]  For similar reasons, Defendants' estoppel claim fails, at least in the context of their discussion regarding causation.  Doc. 25-11, at 24 ("If Plaintiff received such a [pre-adverse] letter and failed to avail himself of the protections explicitly provided to him by law to prevent injury, he should be estopped from now calling upon the law to award him damages resulting from same.").  Additionally, Defendants do not cite to any case law to support this argument.

[17]  Defendants' citation to *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) for the proposition that courts may properly reject a plaintiff's claim "due to a lack of causation between the harm alleged" and a defendant's "violations of the FCRA" is inapposite.  Doc. 25-11, at 25.  In *Casella*, where an individual brought an FCRA claim because he was denied credit, it was clear to the Second Circuit that two consumer reporting agencies did not proximately cause the plaintiff's injury for several reasons.  *Casella*, 56 F.3d at 475.  According to the Second Circuit: "Casella [the individual who was denied credit] presented no evidence that during the period in which Equifax and Trans Union carried the inaccurate San Diego entry, either of them provided appellant's credit report to any third party.  No rational trier of fact could infer from this record that any potential creditor or other person in appellant's community learned of any harmful information from appellees.  Casella's argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report."  *Id.*  In the instant case, in contrast, there is no dispute that MYB provided Plaintiff's consumer report to his employer or that Plaintiff's employer learned of Plaintiff's 1998 conviction from such report.  *See supra* Section I.

[18]  This portion of the Ruling is redacted because it contains personal information relating to Plaintiff.  *See* Doc. 26 ("Electronic Order Granting Defendants' Partial Motion to Seal Defendants' Motion for Summary Judgment Pursuant to Local Rule 5(e)").



████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

Defendants lastly argue that Plaintiff's section 1681e(b) claim should fail because Plaintiff cannot demonstrate that he was injured. Doc. 25-11, at 23. Defendants primarily contend that "Plaintiff has . . . not proffered sufficient evidence to survive summary judgment on a claim for emotional distress damages." *Id.* at 26.

In support of that argument, Defendants cite to *Neclerio*, 983 F. Supp. 2d at 215. In that case, this Court noted that "[t]o demonstrate an actual injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth other evidence that such an injury occurred. Plaintiff must present 'concrete evidence' of such distress." *Neclerio*, 983 F. Supp. 2d at 215 (citations and internal quotation marks omitted). Although this statement of the law is correct, this Court must still read Plaintiff's pleadings liberally given his *pro se* status, and interpret the pleadings to raise the strongest arguments that they suggest. *See Claude v. Wells Fargo Bank, N.A.*, No. 13-cv-535 (VLB), 2015 WL 5797007, at *7 (D. Conn. Sept. 30, 2015) ("Where the party opposing summary judgment is proceeding *pro se*, the court must read the party's pleadings liberally and interpret them to raise

■ ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

the strongest arguments that they suggest." (citing *Belpasso v. Port Authority of New York and New Jersey*, 400 Fed. Appx. 600, 601 (2d Cir. 2010)). In that regard, the Court does not believe that it can resolve the issue of damages as a matter of law on the record before it. Plaintiff explained that he previously "endure[d] the emotional devastation as well as traumatic embarrassment of being labeled a sex offender," and that the erasure of his criminal record was an opportunity to move forward and "rebuild" his life. Doc. 1-2, at 3. Construing Plaintiff's allegations liberally, a reasonable juror could conclude that Plaintiff was injured when SVDP revoked its contingent offer of employment for the contract analyst position; and that Plaintiff is now experiencing a similar type of emotional devastation and he cannot rebuild his life in the same manner. *Id.* at 2–3. Whether that is actually the case is, of course, a question for the jury.

A general issue of material fact therefore exists as to this element of Plaintiff's section 1681e(b) FCRA claim. As a result, the Court cannot conclude that Defendants are entitled to summary judgment on such a claim.

### 2. *Section 1681k*

Plaintiff's Complaint could also potentially allege a violation of 15 U.S.C. § 1681k, which "creates heightened standards for procedures used to collect consumer information for employment purposes." *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 331 (D. Conn. 2009). "To fall within this section, the consumer report in question must contain matters of public record that are likely to have an adverse effect upon a consumer's ability to obtain employment." *Id.*

In the case at bar, the threshold requirements for the application of this section are clearly met, as the information concerning Plaintiff's criminal history was reported for employment purposes, was a matter of public record, and was certainly likely to have an adverse impact on him.

When a consumer reporting agency furnishes such a report, it is obligated to do one of two things: the agency must either (1) at the time the report is transmitted, notify the consumer that public record information is being reported; or (2) maintain "strict procedures" designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is "complete and up to date." 15 U.S.C. § 1681k(a)(1), (2). It is undisputed that MYB did not notify Plaintiff that his criminal record information was being reported to SVDP. Doc. 25-11, at 28. The Court will therefore focus on the second prong of section 1681(a).

"The logical starting point for an analysis of Section 1681k is whether the information provided was complete and up to date. If this is so, then an inquiry into the agency's procedures is unnecessary." *Obabueki*, 145 F. Supp. 2d at 396 (collecting cases). In the context of a section 1681k analysis, the *Obabueki* court concluded that the information that a credit reporting agency provided to the plaintiff's employer was "neither complete nor up to date." *Id.* at 396–97. The court reasoned:

> [The background check report,] dated October 1, 1999, reflected plaintiff's 1995 conviction, but not its subsequent dismissal in 1997 [pursuant to a state statute]. Leaving aside whether the omission of the information was the fault of Choicepoint's contractor or some other entity (*e.g.* the court), and whether the conviction itself should have been disclosed given the disposition under [the statute], the information provided to IBM was clearly deficient because the dismissal was not mentioned.

*Id*.

The Court agrees with the above analysis. Whether or not MYB should have disclosed that Plaintiff's criminal record was erased—or omit the criminal record entirely in accordance with

Connecticut law—the report that MYB provided was clearly deficient because it contained information related to Plaintiff's 1998 conviction.

The next question is whether MYB maintained "strict procedures." 15 U.S.C. § 1681k(a)(2). The *Obabueki* court's analysis, once again, provides guidance. The *Obabueki* court declined to conclude as a matter of law that a consumer reporting agency maintained "strict procedures," in part, because the agency relied on contractors and assumed the accuracy of the contractors' information. *See Obabueki*, 145 F. Supp. 2d at 397. According to the court:

> [T]he Court cannot find that Choicepoint clearly maintained such strict procedures, in order to warrant an award of summary judgment to Choicepoint. Rather, there are issues of fact related to Choicepoint's investigatory procedures which would affect the determination of whether Choicepoint violated Section 1681k in the conduct of their investigations. . . . Choicepoint contracts with various "suppliers" to conduct searches . . . [including] independent contractors. . . . [and] Choicepoint assumes the accuracy of the search performed by the supplier.

*Id*.

The observations in *Obabueki* are relevant to the case at bar. This Court cannot find that MYB clearly maintained such "strict procedures," in order to warrant an award of summary judgment. If anything, there is plausible, if not compelling, evidence that MYB failed to maintain "strict procedures." After all, Defendants essentially concede that MYB's procedures solely involved relying on RapidCourt. There is no evidence in the record that suggests that MYB took any other action to ensure that Plaintiff's information was complete and up to date.

Accordingly, for these reasons and those discussed in *supra* Section III.B.1, the Court declines to grant summary judgment to Defendants on this claim.

## C.      Claims Against Defendant Caruso

Defendant Caruso argues that summary judgment ought to be granted as to the individual claims against her. Doc. 25-11, at 30–31. The FCRA indeed provides for individual liability. The statute defines the term "consumer reporting agency" as "any *person* which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (emphasis added). The term "person," in turn, is defined as "any *individual*, partnership, corporation, . . . or other entity." *Id.* § 1681a(b) (emphasis added); *see also Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 104 n.4 (2d Cir. 2019) ("Under the [FCRA], 'person' includes individuals and corporate entities." (quoting 15 U.S.C. § 1681a(b)).

Caruso claims that Plaintiff has not made any factual allegations of any kind to support a claim for individual liability against her. Doc. 25-11, at 30. Caruso further claims that besides for naming her in the Complaint, there is no evidence that she was personally involved in any alleged wrongdoing. *Id.* The Court agrees. The allegations in Plaintiff's submissions state only that MYB engaged in the preparation and transmittal of Plaintiff's background check report. For example, Plaintiff states that:

> •      Mind Your Business Inc. managed to prepare a background check . . . and sold this inaccurate information to a third party. Doc. 1-2, at 2.
> •      The background report prepared by the defendant (Mind Your Business Inc.). Doc. 11 ¶ 1.
> •      Notice of termination based upon the results of the background report provided by the defendant (Mind Your Business Inc.). *Id.* ¶ 3.

Even reading Plaintiff's submissions liberally, as the Court must, there is no indication that Caruso played any role in "prepar[ing] a consumer report," 15 U.S.C. § 1681e(b), or "furnish[ing] a consumer report for employment purposes," *id.* § 1681k(a). *See also Rodriguez*, 209 F. Supp. 2d at 348 ("Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment."). Therefore, summary judgment is granted with respect to the individual claims against Defendant Caruso.

## D.  State Common Law Claims

Lastly, Defendants seek summary judgment on possible state common law tort claims—such as defamation, invasion of privacy, and negligence. Doc. 25-11, at 31–32. Section 1681h(e) provides qualified immunity to consumer reporting agencies protecting them from certain tort claims. It states, in relevant part:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e); *see also Adams*, 620 F. Supp. 2d at 335 (concluding that 15 U.S.C. § 1681h(e) barred the plaintiff's negligence and defamation claims).

This Court has previously discussed section 1681(h)(e)'s "malice or willful intent" standard. Judge Hall described the standard in the following way:

> Because the term "malice" is not defined in the FCRA, "courts have borrowed the definition used in the context of libel litigation, *see New*

York Times v. Sullivan, 376 U.S. 254, 279–80 (1964), which establishes that a statement will be deemed to have been made with malice when [the] speaker either knew that it was false or acted in reckless disregard of its truth or falsity." *Frost v. Experian*, 1999 WL 287373, at *6 (S.D.N.Y. May 6, 1999). Further, under *New York Times*, to show "reckless disregard," a plaintiff must put forth "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).

*Adams*, 620 F. Supp. 2d at 335.

In the present case, the record contains no evidence indicating that MYB "entertained serious doubts as to the truth" of Plaintiff's 1998 conviction. *St. Amant*, 390 U.S. at 731. Rather, according to Defendants, MYB "had no reason to believe that the information received from RapidCourt . . . was inaccurate . . . or outdated," particularly because MYB "had been utilizing RapidCourt's services since approximately July 2012" without issue. Doc. 25-11, at 22. Furthermore, even construing Plaintiff's submissions liberally, there are no allegations to the contrary. As such, there is no genuine dispute that MYB furnished information "with malice or willful intent" and summary judgment is granted with respect to possible claims of defamation, invasion of privacy, and negligence. 15 U.S.C. § 1681h(e).

On the other hand, Plaintiff's Complaint might also be alleging a claim for negligent infliction of emotional distress, which is not necessarily barred by section 1681h(e). *See Adams*, 620 F. Supp. 2d at 335 ("[S]ection 1681h(e) only applies to claims of defamation, invasion of privacy, or negligence. . . . [T]he defendants are not entitled to qualified immunity from [the plaintiff's] NIED and IIED claims, regardless of whether [the plaintiff] can show malice or willful intent to injure on the part of the defendants." (citation omitted)). To prevail on a claim of negligent infliction of emotional distress under Connecticut law, a plaintiff must show that: "(1) the defendant's conduct

created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Plaintiff has presented enough evidence to create a genuine issue of material fact as to each of the four elements. MYB's apparent failure to undertake any procedures to verify that Plaintiff's criminal conviction had not been erased—aside from assuming that RapidCourt's information was accurate—created an unreasonable risk of causing Plaintiff distress. It is also certainly foreseeable that sharing a criminal history report that included a prior criminal conviction would create distress for an individual. Plaintiff also presented evidence with respect to the third prong, in that he explained that he previously "endure[d] the emotional devastation as well as traumatic embarrassment of being labeled a sex offender," and that the erasure of his criminal record was an opportunity to move forward and "rebuild" his life. Doc. 1-2, at 3. Indeed, Plaintiff knew of his past, but he was hopeful for the person "[h]e may be[come]" in the future.[20] Lastly, as discussed above in *supra* Section III.B.1, there is a genuine dispute with respect to the cause of Plaintiff's termination. Plaintiff argues that he was terminated because of MYB's report. Doc. 1-2, at 2. MYB provides alternative theories. Doc. 25-11, at 23–27.

As such, MYB is not entitled to summary judgment on Plaintiff's claim for negligent infliction of emotional distress.

---

[20] *Hamlet*, IV, v, 43–44 ("[W]e know what we are, but know not what we may be.").

## IV. CONCLUSION

For the reasons discussed herein, the Court makes the following Rulings and Order:

1.     Defendants' motion for summary judgment [Doc. 25] is GRANTED with respect to Plaintiff's possible claims under Connecticut's erasure statute.

2.     Defendants' motion for summary judgment [Doc. 25] is DENIED with respect to Plaintiff's FCRA claims against Defendant MYB, and GRANTED with respect to Plaintiff's FCRA claims against Defendant Caruso individually.  All claims against Defendant Caruso are DISMISSED.

3.     Defendants' motion for summary judgment [Doc. 25] is GRANTED with respect to Plaintiff's possible common law claims of defamation, invasion of privacy, and negligence, and DENIED with respect to Plaintiff's potential claim of negligent infliction of emotional distress.

4.     The Parties are instructed to meet and confer for the purpose of proposing deadlines for all applicable remaining scheduling issues—*e.g.*, the date by which the joint trial memorandum will be filed and the case will be ready for trial.  *See* Form 26(f) Report of Parties' Planning Meeting, C. Conn. L. Civ. R. Civil Appendix.  The Parties are instructed to then submit to the Court a Form 26(f) Report in accordance with the local rules by **December 20, 2019**.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        December 2, 2019

                              */s/ Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge